# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATALIA MUNOZ, | ) |
| Plaintiff, | ) Case No. |
| v. | ) Judge |
| JASMINE ENTERPRISES, INC., | ) Jury Trial Demanded |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Natalia Munoz, by and through her attorneys, Pedersen & Weinstein LLP, for her Complaint against Defendant, Jasmine Enterprises, Inc., states as follows:

## NATURE OF ACTION

1. Plaintiff brings this action to challenge Defendant's unlawful actions against her, including pregnancy discrimination and interference with employee benefit plans, as well as the retaliation she suffered for engaging in protected activity and opposing the company's unlawful conduct. Plaintiff asserts her claims under ERISA and the Illinois Human Rights Act ("IHRA").

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and principles of pendent and supplemental jurisdiction.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a).

## PARTIES

4. Natalia Munoz ("Plaintiff") is a former employee of Defendant.

5. Jasmine Enterprises, Inc. ("Defendant") designs, manufactures and sells bridal

gowns, bridesmaids dresses, evening dresses, and bridal accessories. Defendant is located in Wood Dale, Illinois and sells its products wholesale to retailers throughout the country. It is owned by Kyle and Cynthia Yin. Defendant is an "employer" under the IHRA.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment With Defendant*

6. Plaintiff was formerly employed by Defendant as an Administrative Assistant / Customer Service Specialist from October 2022 until she was constructively discharged on October 11, 2023.

7. As an Administrative Assistant / Customer Service Specialist, Plaintiff's job duties included servicing and assisting retailers with placing orders and answering inquiries via phone or email. Plaintiff also performed sales administrative duties as assigned by management, namely President Kyle Yin ("Yin") and Vice President Cynthia Yin ("C. Yin"). Plaintiff also corresponded with the overseas factory to resolve various issues related to orders, products, shipping and other services, and she created and posted content for the company's Instagram page.

8. Throughout her employment, Plaintiff performed her job well and consistently received positive feedback from her colleagues and customers. Given her qualifications and dedication to the company, Plaintiff had every reason to anticipate a long and successful career with Defendant.

*Defendant Subjected Plaintiff To Pregnancy Discrimination*

9. Notwithstanding her commendable job performance, Defendant subjected Plaintiff to pregnancy discrimination. Defendant's unlawful conduct consisted of treating Plaintiff with blatant hostility because of her pregnancy, removing some of Plaintiff's job duties

because of her pregnancy, and failing to provide reasonable accommodations to Plaintiff as required by state law.

**Hostile Treatment**

10. Defendant treated Plaintiff with blatant hostility because of her pregnancy, including how Defendant treated Plaintiff when C. Yin suspected Plaintiff was pregnant. More specifically, in May 2023, shortly after Plaintiff herself learned she was pregnant, C. Yin confronted Plaintiff at work and demanded to know if Plaintiff was pregnant. Plaintiff was taken aback by the confrontation and tried to deflect the question by telling C. Yin that it was a personal matter she preferred not to discuss. C. Yin continued to press for an answer and Plaintiff reluctantly confirmed for C. Yin that she was expecting. However, Plaintiff also told C. Yin that she was not ready to share the news with others and asked C. Yin not to tell anyone else.

11. Ignoring Plaintiff's request for privacy regarding her pregnancy, C. Yin promptly reported Plaintiff's pregnancy to her husband, President and co-owner Yin. Just as his wife had done, Yin confronted Plaintiff about her pregnancy and she had to implore him not to tell anyone as she had not even informed her family yet.

12. After learning of Plaintiff's pregnancy, Yin and C. Yin treated Plaintiff in an increasingly hostile manner. For example, Yin mocked Plaintiff for not wanting to announce her pregnancy by making snide comments like "tell everyone your good news" and insinuating that he would make the announcement if she did not. For further example, Yin frequently watched Plaintiff when she ate and commented negatively about what or how much Plaintiff was eating. Yin continued this behavior despite Plaintiff asking him to stop.

13. Defendant also inappropriately questioned Plaintiff about working after her pregnancy, despite Plaintiff being clear about returning to work after she had her baby. To be

sure, both Yin and C. Yin insisted on knowing Plaintiff's childcare arrangements. While Plaintiff considered the questions odd and intrusive, she assured them that she had arranged for childcare and would continue working after her baby was born.

**Removal Of Job Duties**

14. Defendant also removed some of Plaintiff's job duties from her as a result of her pregnancy. For example, Defendant took certain projects away from Plaintiff without explanation and also excluded her from sales calls that she previously had regularly attended.

15. Defendant also removed Plaintiff from a major sales event that she was scheduled to attend in August 2023 because of her pregnancy. The event took place twice yearly and Plaintiff attended the event in March 2023 (before she was pregnant) but was disinvited from the second event in August 2023. There is no question that Defendant refused to let Plaintiff attend because of her pregnancy because when Yin first learned of her pregnancy, he said, "Oh my god, we have the market event coming up in August," or words to that effect. He also told Plaintiff, "It is probably best that you not attend now," or words to that effect. Plaintiff assured him that she could still attend while pregnant, but he removed her from the event anyway.

16. For further example, when the office moved in the summer of 2023, Defendant threw away some materials that Plaintiff used for her social media posts. The new office space also lacked an area where Plaintiff could work on social media posts. Plaintiff asked Yin and C. Yin how to address these challenges, but they ignored her and then later disingenuously criticized Plaintiff for not having sufficient social media posts.

**Failure To Accommodate**

17. Consistent with its hostile treatment of Plaintiff because of her pregnancy, Defendant also failed to provide reasonable accommodations to Plaintiff that it was required by

law to provide.

18.     More specifically, Plaintiff occasionally experienced pregnancy-related nausea and vomiting. When this first happened in June 2023, she asked Defendant if she could work remotely for the day, something she had done in the past including when she had traveled out of the country for nearly a month in 2022. To her surprise, Defendant denied her request, telling her that she was not allowed to work remotely and that if she could not work in the office, she would need to take a day off work without pay. Defendant's decision to deny Plaintiff's request when non-pregnant employees were allowed to work remotely – including her the year before – is further evidence of Defendant's animus toward her because of her pregnancy.

19.     Plaintiff again discussed her request to occasionally work remotely because of her pregnancy a few days later with Yin and C. Yin, reminding them that she had an office set up at her home and could access the information she needed to do her job from there when needed. As before, Yin and C. Yin denied her request, claiming vaguely that they were just "not comfortable" with Plaintiff working from home.

20.     Yin also made it clear that he was annoyed with Plaintiff for even making the request for the accommodation and Plaintiff shared her concerns over Yin's reaction with C. Yin. Plaintiff had hoped C. Yin would intervene and serve as a buffer to work through the situation, but C. Yin did not and instead merely disclosed Plaintiff's concerns directly to Yin.

21.     As another example of Defendant's failure to provide reasonable accommodations, in August 2023 Plaintiff asked for a standing desk because her back was hurting and her feet were swelling because of her pregnancy; Plaintiff wanted to be able to move and walk around a bit to alleviate these pregnancy-related symptoms. Yin and C. Yin ignored her request and when Plaintiff asked about the standing desk a second time, they claimed to have

5

forgotten about her request but still refused to grant her request or discuss alternatives.

22. Defendant's steadfast refusal to grant Plaintiff the accommodations she needed to do her job continued throughout her pregnancy. Indeed, as Plaintiff approached her third trimester, she had more doctor appointments because she was diagnosed with gestational diabetes. Plaintiff again asked Defendant if she could work from home at least on the days she had these appointments, particularly since her commute was approximately one hour and she sometimes had to miss an entire day of work if an appointment was scheduled for the middle of the day. Defendant again denied Plaintiff's request and forced Plaintiff to take days off work without pay.

23. By September 2023, Defendant's refusal to provide any of the reasonable accommodations Plaintiff needed or to discuss any alternatives was taking a significant toll on Plaintiff's well-being and ability to continue working at all.

24. Accordingly, on her doctor's advice to discuss a plan with her employer for her third trimester of pregnancy, Plaintiff spoke with C. Yin in early September to once again explain her pregnancy-related symptoms and to request certain accommodations. Plaintiff asked if she could either reduce her hours a bit or work from home. Plaintiff also inquired as to whether there were other job duties she could perform on a temporary basis if Defendant would not let her perform her regular job duties from home. C. Yin told Plaintiff that she would discuss her requests with Yin and get back to her.

25. Plaintiff was hopeful that Defendant was finally going to grant her pregnancy-related accommodations, but it did not. Instead, the day after her meeting with C. Yin, Yin called Plaintiff into a meeting and angrily told her to stop asking for accommodations. He also told her that if she could not come to work, then she simply would not work and would not be

paid. He made it very clear that the company would do nothing to accommodate her pregnancy and that her requests were only angering him.

26. Defendant's adamant refusal to extend reasonable pregnancy-related accommodations, along with its refusal to engage in any interactive process whatsoever, is a blatant violation of Illinois law.

*Defendant Retaliated Against Plaintiff*

27. As a result of Plaintiff engaging in protected activity, namely requesting reasonable accommodations because of her pregnancy and protesting Defendant's unlawful conduct, Defendant retaliated against her. Indeed, during the same conversation in which Yin angrily told Plaintiff to stop asking for pregnancy-related accommodations, he unjustly criticized her job performance and claimed that he was not happy with how she was doing her job. Plaintiff was shocked as prior to this sudden attack, she had not received negative feedback on her job performance.

28. Defendant's retaliation against Plaintiff only escalated from there. Shortly after her meeting with Yin, C. Yin called Plaintiff into a meeting on or about September 21, 2023 and lodged further unjust criticisms about Plaintiff's job performance, claiming Plaintiff had made errors on orders that C. Yin herself had checked and approved. C. Yin's criticisms were otherwise unwarranted because employees frequently made mistakes on orders but none were singled out and reprimanded like Plaintiff was. It was clear that Plaintiff was being targeted because of her pregnancy and need for accommodations.

29. During this September 21 meeting, C. Yin continued to attack Plaintiff's job performance and character explicitly because she was pregnant. C. Yin told Plaintiff (falsely) that "since you've been pregnant, your work performance has not been as good," or words to that effect. C. Yin also told Plaintiff that she (C. Yin) and Yin did not believe that Plaintiff would be

7

capable of handling her job duties after she had her baby. She also told Plaintiff, "I don't think you are the kind of person who can handle a job and a baby," or words to that effect. C. Yin's statements are direct evidence of pregnancy discrimination.

30. Later that day, C. Yin sent Plaintiff an email purporting to summarize their meeting (which she did not do accurately) and told Plaintiff that they would meet again for a further review of Plaintiff's work performance in October following an extended trip that Yin and C. Yin were taking. C. Yin explicitly told Plaintiff that she would be conducting a review of all of Plaintiff's orders before their next meeting and that "[o]nly those employees whose quality is in line with [our] goal will be successful."

***Defendant Constructively Discharged Plaintiff***

31. Ultimately, as a result of the escalating discrimination and retaliation, Defendant constructively discharged Plaintiff.

32. To be sure, Plaintiff left the September 21, 2023 meeting with C. Yin devastated and very frightened about her future with the company and the toll that Defendant's actions were having on her health and well-being.

33. Plaintiff continued working while Yin and C. Yin were away but as their return date approached, Plaintiff became increasingly anxious about how they were treating her and she feared that they were trying to create a pretextual justification for firing her unlawfully.

34. Plaintiff also knew that Defendant's refusal to grant her the reasonable accommodations she had requested would continue and the abusive treatment would only worsen, all of which only heightened her fears about an already high-risk pregnancy and the harm that the escalating stress was having on her baby.

35. Plaintiff's doctor had also warned her that her work situation could cause high

blood pressure which in turn could have extremely detrimental effects on her and her baby.

36. With this knowledge, Plaintiff could not and would not jeopardize her own health or the health of her unborn child by continuing to work in an unhealthy and unsafe environment where her managers so clearly did not intend to honor well-established laws designed to allow pregnant women to safely work through their pregnancies. Accordingly, on October 11, 2023, Plaintiff had no choice but to resign her employment.

***Defendant Violated ERISA***

37. Defendant's conduct also violates the Employee Retirement Income Security Act ("ERISA").

38. More specifically, during Plaintiff's employment, she was on Defendant's health insurance plan and intended to add her baby to the plan following her pregnancy. Defendant also purported to extend paid maternity leave benefits to employees who were with the company for one year.

39. Defendant constructively discharged Plaintiff to prevent her from receiving benefits under the company's health insurance plan and maternity leave policy. As a result, Defendant's conduct violated ERISA.

***Defendant Failed to Exercise Reasonable Care To Prevent and Correct Unlawful Conduct***

40. Defendant's management directed, encouraged, and participated in the above-described unlawful conduct. Further, Defendant failed to exercise reasonable care to prevent and correct promptly any gender discrimination and harassment. Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

41. The discrimination and retaliation described above was consistent with

Defendant's standard operating procedure.

*Plaintiff Timely Filed A Charge Of Discrimination And Retaliation With
The Illinois Department Of Human Rights*

42. Plaintiff timely filed a charge of discrimination and unlawful retaliation against Defendant with the Illinois Department of Human Rights ("IDHR"). On or about August 1, 2025, the IDHR issued Plaintiff notice that she may commence a civil action in the appropriate state court within ninety-five (95) days after receipt of the notice.

*Damages*

43. As a direct result of Defendant's unlawful conduct, Plaintiff has suffered extreme emotional distress.

44. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

45. Plaintiff's career and reputation have been irreparably damaged as a result of Defendant's unlawful conduct.

46. Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct.

47. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring attorneys' fees and costs.

48. Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

## COUNT I

### VIOLATION OF § 501 OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

49. Plaintiff realleges paragraphs 1 through 48 and incorporates them by reference into Count I of this Complaint.

50. Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140, it is unlawful for an employer to discharge, constructively discharge, discipline, or discriminate against a participant or beneficiary for exercising any right to which she is entitled under the provisions of an employee benefit plan.

51. Plaintiff was a participant or beneficiary of Defendant's benefit plans.

52. Defendant took adverse actions against Plaintiff and constructively discharged Plaintiff with the intent of interfering with, preventing or retaliating against her for the use of such benefits.

53. By the conduct alleged herein, Defendant violated ERISA.

## COUNT II

### PREGNANCY DISCRIMINATION IN VIOLATION OF THE IHRA

54. Plaintiff realleges paragraphs 1 through 53 and incorporates them by reference into Count II of this Complaint.

55. The Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-102(I), makes it unlawful for an employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth.

56. By the conduct as alleged herein, Defendant subjected Plaintiff to pregnancy

11

discrimination in violation of the IHRA.

## COUNT III

### DENIAL OF REASONABLE ACCOMMODATION IN VIOLATION OF THE IHRA

57. Plaintiff realleges paragraphs 1 through 56 and incorporates them by reference into Count III of this Complaint.

58. The IHRA, as amended by the Illinois Pregnancy Accommodation Law, 775 ILCS 5/2-102(J)(1), makes it unlawful for an employer to not make requested reasonable accommodations for any medical or common condition of an employee related to pregnancy or childbirth, unless the employer can demonstrate that the accommodation would impose an undue hardship on the ordinary operation of the business of the employer.

59. The IHRA, 775 ILCS 5/2-102(J)(2), also makes it unlawful for an employer to deny employment opportunities or benefits to or take adverse action against an otherwise qualified employee if the denial or adverse action is based on the need of the employer to make reasonable accommodations to the known medical or common conditions related to the pregnancy or childbirth of the employee.

60. By the conduct as alleged herein, Defendant subjected Plaintiff to pregnancy discrimination and denied her reasonable accommodations in violation of the IHRA.

## COUNT IV

### RETALIATION IN VIOLATION OF IHRA

61. Plaintiff realleges paragraphs 1 through 60 and incorporates them by reference into Count IV of this Complaint.

62. The IHRA, specifically 775 ILCS 5/6-101(A), makes it unlawful to retaliate against an employee who opposes what she reasonably and in good faith believes to be unlawful

discrimination, sexual harassment in employment, or because she has made a charge, filed a complaint, or participated in an investigation, proceeding, or hearing under the act.

63. Defendant retaliated against Plaintiff for engaging in protected activity.

64. By the conduct as alleged herein, Defendant subjected Plaintiff to unlawful retaliation in violation of the IHRA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violate ERISA and the IHRA;

b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d. In the alternative to paragraph (c), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

e. Award Plaintiff compensatory damages;

f. Award Plaintiff punitive damages;

g. Award Plaintiff liquidated damages;

h. Award Plaintiff prejudgment interest;

i. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

j. Award Plaintiff such other relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:   October 22, 2025

                                          Respectfully submitted,

                                     By:
                                             <u>/s/ Erika Pedersen</u>
                                             Attorney No. 6230020

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
231 S. LaSalle Street
Suite 2100
Chicago, IL  60604
(312) 322-0710